```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

FRANCISCO A. ESPINAL                :    BK No. 11-11340
NORMA ESPINAL                               Chapter 13
          Debtors

- - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER MODIFYING SECURED CLAIM

APPEARANCES:

    Jeffrey Dana, Esq.
    Attorney for Debtors
    The Family Law Center of Rhode Island
    38 Bellevue Avenue, Suite G
    Newport, Rhode Island 02840

    Kathryn A. Fyans, Esq.
    Attorney for Bank of America, N.A.
    Harmon Law Offices, P.C.
    P.O. Box 610345
    Newton Highlands, Massachusetts 02451-0345

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 11-11340

Heard on the Debtors' Motion to modify, i.e., reduce the secured claim of Bank of America (the "Bank") to the market value of the Debtors' property, pursuant to 11 U.S.C. §§ 1322, 1325, and Fed. R. Bankr. P. 3012.

## ISSUES AND BACKGROUND

The Debtors contend that the value of their multi-family property at 42-44 Miller Avenue, Providence, Rhode Island, is $80,000, while the Bank places the market value at $135,000. The Court has heard testimony and reviewed documentary evidence submitted by a real estate broker, Peter Hurley ("Hurley"), for the Debtors, and Rosemary Gately ("Gately"), a certified real estate appraiser, who testified as to her estimate of value on behalf of the Bank. In addition to considering the testimony and the written appraisals, the Court conducted a view of the subject property, both interior and exterior, and took a drive by look at the comparable sales used by both witnesses.

While the substantive issue here is the value of the Debtors' four-unit rental property, a related issue currently being proffered by this and other banks, should be addressed before we do anything else. That is, the argument that the court, as a matter of course, should give "certified" appraisers' opinions of value greater deference and weight than the opinions of real estate brokers, because brokers are either: (1) neither competent or not

1

BK No. 11-11340

adequately educated to opine in court as to the value of real estate; or (2) if they are allowed to so testify, their opinions are entitled to little weight because their appraisal format and sales data don't measure up to "*certified formal appraisal*" standards.[1] However, increasing exposure to this issue has taught me that the weight accorded to expert testimony is earned through the expertise, candor, and objectivity of the witness, and not by the unilateral presumptions announced by Ms. Gately in this case.

Based on the record in this case, I am comfortable ruling that the Bank's comments as to competency generally, as well as its evidence as to value in this case are inappropriate and clearly off the mark, i.e., Gately's testimony amounted to a partisan, aggressive sales pitch intended to degrade all broker/witnesses, rather than an objective effort to assist the Court to arrive at a correct accurate valuation of the subject property. This observation is reflected in the exuberance with which the Bank's appraiser criticizes the opinions of all real estate brokers, i.e., the people who earn their living by participating in the purchase and sale of the same properties which "the certifieds" claim to be

---

[1] *See, e.g., In re Barry P. Sullivan*, BK No. 10-15408, October 28, 2011, valuation hearing transcript, (Doc. No. 60) at 0:27:18-0:37:00 and 2:00-2:04:30, where the creditor bank argued that brokers' price opinions are not entitled to much weight because they do not contain sufficient pages of [boilerplate] qualifications, disclaimers, definitions, and sales data that often has woefully little bearing on the value of the subject property.

BK No. 11-11340

uniquely qualified to evaluate in Court.  As for the merits of the present dispute, performance-wise, this is absolutely not a poster case for the proposition that courts should favor the testimony of certified appraisers over that of other expert witnesses.  Quite to the contrary, while all of the formal requirements of the Bank's thirty-nine page boilerplate appraisal have probably been carefully adhered to, the substantive and informative part of the report is lacking in most realistic and practical respects, as discussed below.

## **DISCUSSION**

For example, it is noted at the outset that the appraisal of the Debtors' property should be an exercise in common sense, given the plethora of comparable sales data available.  This is not the Manhattan Project.  It is comparing apples with apples, of which there are plenty in the neighborhood.

Upon consideration of the relevant and persuasive evidence, I find that the market value of this property is $80,000, which is near the average price of the properties that Hurley used as comparables, two of which are within a short walk to the subject property. I agree with and adopt his approach, i.e., that in the current depressed market, bank (foreclosure) sales, short sales, and distressed sales in general are a relevant part of the market data that may be considered by experts in real estate valuation.

3

BK No. 11-11340

In contrast, Ms. Gately rejects Hurley's approach, as is her right to do, but not without explaining her reasons for adhering rigidly to appraisal instructions that are oblivious to post 2008 real world market conditions.

Further, contrary to what this Court has long understood to be the essence of the market data approach to determining value, the sales considered by the Bank's appraiser are in blatantly superior locations. The closest was two miles away, and in no way comparable to the subject property or its neighborhood. In traveling to view the subject and its location, Ms. Gately had to drive right by countless three and four family houses, all closer to the subject than any of those used in her report. Ms. Gately's comparables are all in obviously superior condition and in more desirable locations than the subject property. To give any credence to Gately's contention that the sales she used were in comparable neighborhoods, ignores the cliché "location, location, location" as a universal consideration in residential real estate valuation.

Ms. Gately's enthusiastic description of the subject property's alleged improvements is equally skewed, i.e., "the second floor's kitchen and bathroom updates," Bank Ex. 1 at 35, as being *plus adjustments*. These features have an unmistakable "do-it-yourself," non-professional appearance. And the owner-built

BK No. 11-11340

deck, which Gately noted as an "above standard amenity" for the neighborhood, has an obscure[2] ramp/step, sloping downward at about twenty degrees, with no visual cues, warnings, lighting, or handrails. How such a hazardous situation, i.e., a stumble and fall in the making, could possibly add to the value of property is not addressed.

In advocating for her opinion of value by referencing the property's higher than average number of units, Gately opines in conclusory fashion, and without support, that "[t]he subject is noted to exceed the neighborhood predominant value." Bank Ex. 1 at 36. Mainly because she relied on sales of far better maintained properties in far superior locations, Gately's $135,000 opinion of value is rejected, and I find and conclude that the market value of 42-44 Miller Street, as of April 4, 2011, is $80,000. Further discussion of the shortcomings of the Bank's position would only be overkill.

Accordingly, the Debtors' Motion to Modify the Secured Claim of Bank of America is **GRANTED**, an Order shall enter consistent with this Decision.

Enter.

                                                                             Arthur N. Votolato
                                                                             U.S. Bankruptcy Judge

Entered on docket: 5/4/12

---

[2] And very likely, a building code violation.

5